Corporation v. Telefonaktiebolaget LM Although we believe the board committed several errors in its failure to find a motivation to combine the prior art references cited by TCL in this proceeding, I'd like to focus on what I think is the most straightforward and simplest basis for reversing the board's decision and remanding for further analysis. And that's the relationship between the USUI piece of prior art, the mobile execution environment standard cited in USUI, and the security model of Java 2 microedition. So on appendix page 32, the board found that the patent donor submitted persuasive evidence that using J2ME, that's using Java 2 microedition on its own, would have been sufficient to be compliant with the mobile execution environment standard, that's MEXE. No evidence, much more. Now, Java 2 microedition, everyone agrees, has a fairly basic security model. It uses what's called a sandbox model. Code is either trusted or untrusted. Untrusted code is placed in a sandbox with limited to no access to system resources. Trusted code, in contrast, has access to system resources. This is black and white, one or zero, either you were trusted or you were untrusted. As Erickson and as the board noted, has the concept of a sandbox for untrusted code. But it doesn't stop there. It also includes three different security domains for trusted code, each with varying levels of access control. And USUI teaches that a security manager is necessary to implement the three trusted domains. But USUI itself doesn't teach how to do that. Java 2 microedition on its own includes a security manager that would implement the three trusted domains of the MEXE standard. And in fact, there's not even argument from Erickson that J2ME on its own included a security manager that satisfied these three trusted domains. Every time that Erickson talked about the J2ME standard with the board with MEXE, Erickson was very careful to say that USUI was using J2ME for the untrusted portion of the MEXE standard. You'll see this on appendix pages 3882, that's in the patent donor's response. Erickson pointing out with the untrusted domain being fully addressed by the sandbox security model. Their expert says the same thing on appendix page 3983, 3984. As for the MEXE untrusted area, USUI is using the sandbox model that was specifically designed for the J2ME platform. What Erickson hasn't argued is that J2ME on its own has a security manager that would satisfy the three trusted domains. So in our view, motivation to combine is straightforward. USUI teaches you need to have a security manager to comply with these three trusted domains requirement and Gong and Oaks both provide general architectural guidance on how to implement such a security manager. In fact, this is an answer... Why would Gong and Oaks which provide security in a computer environment, why would one of ordinary skill in the art be inclined to look to those references to provide a security capability in a mobile environment like USUI? Well, as it was recognized at the time, Sun Microsystems in the computer environment had provided a more complex, more granular system for access control in the computer environment. In designing J2ME, which was intended for the mobile environment, Sun included a much more basic, much more limited security model. So when USUI says implement MEXE, which is more granular, which provides more control, more complexity than Sun chose to include in the mobile environment, you would necessarily look to the desktop environment, which is where this more complex, more granular access control... But how do you know what to pick in the greater environment? And where's the motivation to combine only the access controller of Oaks with that, the specific motivation to say, okay, we're going to take this, this, and this from the desktop environment? Well, let's look at claim one of the 510 patent. I think this is helpful because I think one of the ways the board... Can you answer her question? Well, Your Honor, what I'd like to do is answer it in the context of claim one of the 510 patent because I think it's important that what we're asking for here is a motivation to combine... Why don't you specifically identify the things that you're going to pluck out of Gong and Oaks and stick in USUI? Yes, Your Honor. And point out where the evidence was that Warren Schillinger would have done that. I think that's the thrust of the Chief Judge's question. I think it's... Well, yes. The way I see the case is that it's a substantial evidence case. The question of whether or not to modify USUI after looking at Gongs and Oaks is a fact question, right? For review here. It's a fact question. I think that's correct. I would point the board to... So it's a fact question. So we have to ask, you know, what was the evidence? And there's evidence that goes both ways. You have an expert that said, well, generally, well, of course one of Warren and Schillinger would have looked at Gong and Oaks. I mean, what he's trying to do is to improve on the ability of the phone to control these transmissions coming in. We go look at computers. And that's just... That's the best evidence you have is that statement of your expert, not backed up by anything more than just that. The other side comes in and says, well, that may be the case, but actually the current thinking about telephones sort of teaches away from doing that because it's a very limited environment. You don't have a lot of space for cramming in a lot of this other stuff. So there's, in my judgment, there's evidence on both sides of the fence. And when it comes to deciding a substantial evidence case, if there's evidence on the other side against you, you lose. If you were here arguing the other side of the case, you would be arguing substantial evidence for sure, and it's an easy case. I think it's certainly true. What I'd say... So it seems to me integral to your case to be able to identify specifically what your one of Warren and Schillinger would have done looking at Gong and Oaks. What would he have plucked out in order to achieve the job? And your best argument is that an attempt was made to do it, that somebody actually took a cell phone before the filing date and crammed something else into it besides the sandbox. But the point was that you didn't make any factual showing about exactly what it was that was put in and how that worked. So to me, it's a failure of proof case on your side. That's why I was interested in a real direct answer to the Chief Judge question instead of a let's go around the loop and talk about something else. Well, thank you. So the direct answer is what we believe that the patent that one of Schillinger would have taken from Gong and Oaks is very basic, high-level architecture about how to implement a secure... Here is the testimony from your expert that said just exactly that. Our expert identified the specific pieces... Why don't you give us some citations for that? I grant you that your expert made a general statement that Warren and Schillinger would of course have looked at Gong and Oaks and made these adjustments to Yasui. But show me in the record where that specific language is from your expert. It's appendix pages 3700 to in particular 3720. 3720? Yes, and what our expert is doing there is he is identifying the very high-level architectural pieces of how a security... Is that paragraph 223? I believe it's paragraph 178 through 223, Your Honor. Is there a particular paragraph in that collection that you would direct us to? Well, paragraph 178 explains that generally... So you're on 3700. Okay, so this is about 20 pages that you referred us to. Yes, Your Honor, and I'm sorry about that, but what our expert did is explain how the general high-level structural disclosures of the Gong reference correspond to the general high-level structural security manager disclosures. I'll certainly claim one of the 510 patent here. And recall, this claim is really quite basic. The key portions that we're relying on for Gong are simply when you implement a security manager, you need to have an interception module that receives a request to access the protected resources. Gong calls that a resource manager, and then you need to have a decision entity to determine if that request should be granted, and that decision entity has to hold access and permission policies. Gong teaches that this is an access controller. So the question for motivation to combine is whether one would be motivated to combine Yosui and Gong, keeping in mind that Yosui says you need to add on a security manager to the J2ME mobile environment in order to implement these three trusted domains. Wouldn't that then depend on what you're going to do, what you're going to stick in the phone beyond the sandbox and how much space it was going to take up in the phone? Well, I think that's right, but Yosui has crossed that bridge. Crossed which bridge? The bridge of going beyond what Sun Microsystems already put into J2ME. We think the board's analysis of whether Gong and Oaks were too resource intensive were based on a misunderstanding of whether J2ME already complied with the MEXC standard. So Erickson was able to say, well, Sun Microsystems in its wisdom chose not to include anything beyond basic J2ME security when it implemented J2ME for the mobile environment. Therefore, one of skill in the art wouldn't go beyond that. And if you accept the premise, it's really a fairly compelling argument and one that the board accepted. But the problem is the premise is wrong. Yosui already says you have to add more into the mobile environment than Sun Microsystems chose to put in there with the basic MEXC standard. But even if that's what Yosui said, that you have to add more, the question is why would one of ordinary skill in the art look to Gong and Oaks to find that extra security and what in those computer environment references might apply in the resource restricted environment of a mobile system? And certainly what our expert testifies is that these are known methods of providing more granular access control in the basic sandbox system. And in particular, Gong itself points to the defects in the sandbox system and the need for more granular access control. With the panel's permission, I'll reserve the remainder of my time. Good morning, your honors. I think the court's already recognized that this is really a case about is there substantial evidence to support the board's decision on the motivation to combine. And some of that's been couched by the briefs from TCL in terms of various arguments that they are arguing now they didn't make before the board. I think the more important question is what did the board actually have in front of it in making its decision? And so if we turn to the board's decision on page 27, APPX 27, the board actually quotes TCL's actual argument that they're making as to what are they combining. And they say petitioners rely on a particular theory for the motivation to combine. Specifically, that is, quoting TCL, would that person of skill in the art have been motivated to implement the access controller of Gong as the security management mechanism of USUI to provide the fine-grained access control identified in USUI? Now the board goes on to analyze that under the appropriate standards, first looking to the scope and content of the prior art, looking at what is disclosed in USUI and what's disclosed in Gong, making findings that USUI is directed to a particular problem of developing software user interface for a very resource-limited device, a mobile phone, which they call a CLDC, Connection Limited Device Configuration. And that had known parameters, as Erickson explained in its testimony and evidence that it submitted to the board. And the board found that that was a design criteria utilized for the phones. And what USUI was trying to do was develop software that could execute quickly. Java is known, according to USUI, to execute slowly. And so the solution for that was keep the Java component as small as possible so it would execute quickly. The board turned next to evaluating Gong and found that it was directed to a computer-based desktop-type system interconnected with the Internet that had complex security parameters and that it was basically directed to a different environment. And that was supported by substantial evidence submitted by Erickson showing that Sun Microsystems, the developer of the Java system, actually considered those two environments very different, had different software, different applications, each of which required different system requirements in terms of processing power and memory, ultimately concluding that it wouldn't have been obvious to make that combination. I want to address another point that's been raised, which is the concept of the MEXC standard. USUI references that in the actual text of the article, and contrary to what counsel said, Erickson did submit testimony and evidence directed to that aspect, that USUI would use three domains for the trusted software and the sandbox model for the untrusted, that those are compliant with the MEXC standard. So again, there is substantial evidence supporting the board's conclusions that they failed to demonstrate the motivation to combine USUI with Gong and similarly USUI with the Oaks reference in a separate IPR. One of the issues raised in the briefing that wasn't raised here in discussion was the argument that the board should have construed the claims before addressing the motivation to combine. Here it was clear that was unnecessary to resolve the dispute. The elements that were found lacking in USUI, TCL freely admits that those elements aren't in USUI. In their own papers, so in APPX 94, they recognize in the petition that USUI fails to disclose the interception module aspect of the claim. And then in APPX 94, they concede that USUI fails to disclose the decision entity module. So without the proposed combination, there was no need to do a claim construction because petitioner freely admits that USUI by itself fails to disclose these claim elements. So there again, the board did not err by not construing those because it's not necessary to resolve the dispute. One further point, they raised a number of new arguments in their briefing that weren't before the board. And one thing I would note is they did not raise these in a request for a hearing before the board. So the board never had an opportunity to consider these. One is that somehow the MEXC standard itself provide a motivation to make the combination. Well, the board addressed the MEXC standard based on the arguments actually presented during the proceeding and found that there was no motivation based on compliance with the standard. They also reached to further instances in GOM that they allege would support a motivation to combine. Again, these were not addressed below. Finally, in their appeal briefing here, they raised for the first time that the claims themselves should be considered broad enough. I would point out here my only opportunity to respond to that, that the claims don't even address an access controller, the decision entity, or the interception module. So those elements aren't even the claims. Of course, there's no testimony about that, and it's simply an attorney argument. Finally, I'd note that, again, it's TCL's argument that it's GOM's access controller that would be implemented in USUI. And they even point and say it would be a primary embodiment of GOM, that access controller, that would be implemented. So nothing as broad as they're arguing now, and there is no expert testimony to support their arguments. And, in fact, the expert testimony supports Erickson's position that there was substantial evidence on the board's findings. If there are no questions from the panel. Your Honor, when I began my argument by saying there's no evidence of a particular point in the record, I would hope to hear the appellee cite the record evidence to support that point. And what's critical is that my friend didn't defend the board's mistake on appendix page 32 that I began my argument with. There is no evidence, and Erickson has never argued, that J2ME on its own was sufficient to be compliant with MEXC. That mistake, this belief that Sun Microsystems, in J2ME itself, had already included a security manager that was compliant with MEXC, tainted the board's analysis of whether there was motivation to add a security manager using Gong and Oaks onto the Yasui reference, because Yasui teaches you need to implement a security manager, and it infected the board's reasoning about whether it would have been common sense just to use J2ME sandboxing. We argue below with the same argument that we're making now, which is that J2ME sandboxing on its own is not sufficient to comply with the MEXC standard. So what you really have here is, frankly, it's a round hole and a round peg. Yasui says you need a security manager to provide this more granular access to system resources via the three trusted domains of MEXC. Yasui says that, but the question is where would you go look? Where would one of ordinary skill in the art be inclined to look? Our expert testified one ordinary skill in the art would look to known methods of providing more granular access control, indeed, that have been used in the Java environment, like Gong and Oaks. Sun said we're going to do something less complicated on the mobile system. Yasui said you need to do something more complicated. Where would one of skill in the art go to look for that? One of skill in the art would go back and look at the known, more complex methods of security control that had already been used. Their expert doesn't say where else one would look. That's really quite significant. You'll see this is paragraph 203. Wasn't the board saying your expert's explanation wasn't specific enough? You fail for specificity? Isn't that what they were saying? Your question to ask is to decide whether or not you need to be more specific than your expert was? The problem is I think the board's analysis was based on a false premise. The board said, hold on, Sun Microsystems already has an MEXC compliant security manager in Java 2 micro edition. Why would you go out and do more with that? Why would you add on these more resource heavy, more intensive, complicated security management systems when you already have a perfectly good security manager in Yasui that already satisfies MEXC? That I think is the essence of the board's understanding why the board rejected our expert's testimony. It simply didn't understand that Yasui was already teaching you need to go beyond MEXC. You need to go beyond J2ME in order to satisfy MEXC. You need to add a more complicated security manager onto the basic Java 2 mobile edition environment. The arguments that say you wouldn't do anything more complicated than Sun has already done simply fall away. We think those were crucial to the board's analysis. We simply ask to return to the board and with that mistake corrected to have further proceedings there. Thank you.